IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUKE SANCHEZ,

    Plaintiff,

vs.                                                                         No. 1:12-CV-00720 WJ/ACT

DEPUTY SHERIFF C. LABATE,
CAPTAIN DON DONGES, and
SHERIFF RENE RIVERA,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint, filed October 4, 2012 (**Doc. 18**).[1] Plaintiff alleges that he was arrested and that Defendant proceeded to prosecute Plaintiff, although Defendants had no probable cause to believe he had committed any crime when he shot and killed an individual in self-defense. Having reviewed the parties' briefs and applicable law, I find that Defendants' motion is well-taken and shall be granted.

### BACKGROUND

According to the Amended Complaint (Doc. 7, "complaint"), on or about July 4, 2009, in Valencia County, New Mexico, Plaintiff allegedly witnessed a burglary in progress while traveling on a public roadway not far from his residence. Plaintiff dialed 911 from his cell phone and followed the burglar's escape vehicle. While Plaintiff was still on the line with the 911

---

[1] Defendants filed an earlier motion to dismiss (Doc. 5), to which Plaintiff filed a response. However, after Plaintiff filed an amended complaint (Doc. 7), Defendants filed the instant motion, which renders the earlier motion to dismiss moot. *See* Doc. 18, n.1.

dispatcher, the van stopped and one of the van's occupants, Gary Gabaldon, exited the vehicle. Mr. Gabaldon came to Plaintiff's vehicle with a bat, broke through the driver's side window of Plaintiff's truck and aggressively battered him.  Law enforcements arrived at the scene.  Plaintiff alleges that all the physical evidence from the scene indicated that Plaintiff shot a single shot in self-defense.

The complaint alleges that Plaintiff was taken into custody and interviewed at the Valencia County Sheriff's Office ("Sheriff's Office"), and that Defendant Donges, a police captain with the Sheriff's Department, directed Sheriff Labate to file a criminal complaint charging Plaintiff with an open count of murder.  Plaintiff was arrested on that charge and placed in custody at the Valencia County detention Center.  Plaintiff claims that he was denied water, housed in a cell with a "particularly offensive and troublesome inmate," told to drink from the toilet and denied cleaning materials.  His release from the facility was delayed "for as long as possible" despite bond having been posted shortly after his first court appearance.  A preliminary hearing was held in early November, 2009, at which the magistrate found there was no probable cause to believe Plaintiff had committed any crime, and ordered his discharge.

In what appears to be a single count in the Amended Complaint, Plaintiff states that Defendants acted in concert to violate his Fourth and Fourteenth Amendment rights to be free from seizure and criminal prosecution without probable cause.  Plaintiff asserts that Defendants "persisted" in his prosecution, despite the lack of probable cause to believe he had committed any crime.  He contends that while the police officers were not present to witness the crime, they did not have probable cause to charge him with a crime and that he should have been released from custody.  The complaint states that details of the attack were available on the recording of the 911 call, but instead of being released, Defendant Donges directed Defendant Labate to file a

criminal complaint charging Plaintiff with an open count of murder. Plaintiff contends that he should not have been prosecuted for the crime, since all of the evidence presented at the preliminary hearing had been available to Defendants from the time the incident occurred. Plaintiff seeks damages for emotional distress, loss of income, attorney fees and costs necessary to defend himself against the criminal charges, and injury to his reputation.

The Court shared some of Defendants' initial confusion over what Plaintiff's claims might be other than a Fourth Amendment unlawful arrest claim, since the Amended Complaint fails to allege specific theories under individual counts. However, Plaintiff makes it clear in his response that he does not allege a malicious prosecution claim, but in addition to the unlawful arrest claim, he is also alleging a Fourth Amendment false imprisonment claim. Doc. 19 at 11.

## I.   Legal Standard

Defendants raise the defense of qualified immunity. However, as Defendants point out, neither the original complaint nor the Amended Complaint indicates whether the Defendants are being sued individually (in which case, qualified immunity would apply), or officially.[2] Nor do the allegations in the complaint clearly describe the personal involvement of each Defendant. *See Foote v. Spiegel et al.*, 118 F.3d 1416, 1423 (10th Cir. 1997) (Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.). In the response, Plaintiff attempts to clarify the roles of Defendants by stating that Defendant Labate was the main investigating and arresting officer and that the other "supervisory officers" ordered the arrest. Plaintiff contends that the arrest was completed under the common knowledge of all three Defendants.

---

[2]  Qualified immunity is not available as a defense to municipal liability. See Owen v. City of Independence, 445 U.S. 622, 638 (1980). *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

3

In the final analysis, it matters little what specific roles each Defendant played, since the root question is whether Plaintiff's arrest was supported by probable cause. The existence of probable cause for the arresting officer (purportedly Defendant Labate) would also provide a shield from liability for the other officers to whom Labate would have reported before effecting the arrest. *See Karr v. Smith,* 774 F.2d 1029, 1031 (10th Cir. 1985) ("[T]he collective information of police officers and law enforcement officers involved in an arrest can form the basis for probable cause, even though that information is not within the knowledge of the arresting officer.").

The Court will assume that Plaintiff is suing Defendants in their individual capacities.[3] Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing law. *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005). This is generally accomplished when there is controlling authority on point or when the clearly

---

[3] In the event Plaintiff meant to sue Defendants in their official capacities, the lawsuit would simply be another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Griess v. Colorado*, 841 F.2d 1042, 1045 (10th Cir. 1988) (An official capacity suit is treated as a suit against the state). Defendants contend that Plaintiff has not alleged a claim under *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978) (*"Monell")* and that even if Plaintiff did allege such a claim, Defendants' actions would not be the result of a municipal policy, but rather due to Defendant's own unconstitutional acts in violation of that policy. *See* Doc. 18 at 4, n.3. The Court agrees with this assessment, and further concludes that Defendants alleged actions do not give rise to a constitutional claim.

4

established weight of authority from other courts supports plaintiff's interpretation of the law. *Id.*

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544). The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations. *Id.*

## II.     Fourth Amendment Unlawful Arrest

Plaintiff alleges that Defendants lacked probable cause to arrest him. The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *Oliver v. Woods*, 209 F.3d 1179, 1185-86 (10th Cir. 2000) (quoting U.S. Const. amend. IV). A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *U.S. v. Valenzuela*, 365 F.3d 892, 896 (10th Cir.2004)

(internal quotation marks omitted). The probable cause standard is an objective one; the subjective belief of an individual officer whether there is probable cause is not dispositive. *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1266-67 (D.N.M. 2010) *aff'd*, 635 F.3d 250 (10th Cir. 2011) (citation omitted). In determining whether an officer has sufficient reasonably trustworthy information to constitute probable cause, clearly established case law requires officers to look at the "totality of the circumstances." Id. at 1267 (citations omitted). While officers may weigh the credibility of witnesses in making a probable cause determination, they may not ignore available and undisputed facts. *Id*. (citations omitted).

Plaintiff contends that Defendants ignored other "obvious and available evidence" that would have exonerated him on the spot after Defendants arrived at the scene: Plaintiff's own explanation for the turn of events; his car window that was broken to the inside, thus corroborating Plaintiff's statement that his assailant broke the window from the outside;[4] and the 911 tape. However, none of this additional evidence, assuming all of it is true, is enough to vitiate the officers' conclusion that a crime had been committed, particularly since Plaintiff admitted to the killing. Defendants were aware (either by being present at the scene or what they were told by a fellow officer) that Plaintiff had admitted the criminal act of killing another human being. They could observe the smashed driver's window on Plaintiff's car, but they also knew that Plaintiff had not attempted to leave the scene—nor is there any allegation that Plaintiff attempted to leave when he saw the van stop and Mr. Gabaldon exit the vehicle.

Under Tenth Circuit law, the Fourth Amendment requires officers to "reasonably interview witnesses readily available *at the scene*, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero v. Fay,* 45 F.3d at 1467-77 (emphasis added). Thus, the Fourth

---

[4] The Amended Complaint includes a photograph of the car with the window smashed inward. Doc. 7 at 3.

Amendment did not require that Defendants postpone the arrest while they could obtain a copy of the 911 recording, since these recordings are typically not available on at the scene. Further, as Defendants point out, a 911 tape is not comparable to a videotape as a neutral and accurate observer, and so a recording of the call would indicate only what Plaintiff wanted to tell the 911 operator.[5]

Plaintiff had admitted to killing Mr. Gabaldon, and there was no reason to consider Plaintiff's admission untrustworthy. Defendant did not observe Mr. Gabaldon break the window of Plaintiff's car, and the 911 tape was not immediately accessible at the scene. Even if it was, the contents of the 911 tape would have limited value in the face of the other immediately available evidence. In light of this information, Defendants had probable cause to arrest Plaintiff. Nevertheless, in Plaintiff's view, Defendant should simply have accepted his account that he shot Mr. Gabaldon in self-defense and released him. Plaintiff is quick to point out evidence that Defendants "ignored" (such as Plaintiff's own account, the smashed window and the 911 tape). However, the "totality of circumstances" also required the officers to consider other information, such as the fact that Plaintiff had chosen to continue his encounter with the burglary suspect by following him. As part of an on-scene investigation, the officers were also allowed to question why Plaintiff did not simply exit the scene by backing up or turning around his vehicle when Mr. Gabaldon allegedly exited his vehicle and headed toward Plaintiff with a weapon. Viewing all the facts favorably to Plaintiff, the Amended Complaint does not allege a

---

[5] Plaintiff cites to *Cortez v. Mcclauley*, 478 F.3d at 1117 as a comparable example of a failure to adequately investigate prior to arresting. However, in *Cortez,* as the Tenth Circuit noted, the only information which arguably implicated Rick Cortez "was a statement attributed to a barely-verbal two-year old child that her babysitter's "boyfriend" had 'hurt her pee pee' on a claim of child molestation." Thus, it was "unclear whether a crime had even taken place." *Id.* at 1117 (citation omitted). This differs from the instant case, where prior to Plaintiff's arrest, Plaintiff admitted to killing Mr. Gabaldon, even in self-defense.

plausible Fourth Amendment claim that Plaintiff was arrested without probable cause.  On the contrary, those facts only support Defendants' belief that a crime had been committed.

Based on the allegations in the complaint, the Court finds that Defendants are entitled to qualified immunity because the law was not clearly established that it was unconstitutional to arrest an individual who admitted to killing another person in self-defense, and thus a reasonable officer would not have known that arresting Plaintiff would violate his Fourth Amendment rights.  In coming to this conclusion, the Court is not required to factor in the existence of the 911 recording or the smashed window because the "totality of circumstances" inquiry also allowed the officers to consider other information that was not exonerating.[6]  Also, the law requires only a reasonable application of existing law to their own circumstances, and those circumstances need not be identical to the facts at issue.  *Johnson v. Martin*, 195 F.3d 1208, 1216 (10th Cir.1999).

In the alternative, Defendants are entitled to dismissal on this claim because the facts as alleged by Plaintiff in the Amended Complaint, and when viewed favorably to Plaintiff, do not state a plausible claim for unlawful arrest under the Fourth Amendment.

### III. Fourth Amendment False Imprisonment

Plaintiff claims that in continuing to prosecute the case against him instead of releasing him from custody, Defendants falsely imprisoned him, in violation of the Fourth Amendment. *See* Doc. 19 at 11.  This claim appears to be inseparable from the unlawful arrest claim except for Plaintiff's allegations that Defendants "persisted" in Plaintiff's prosecution, despite the lack of probable cause.  This claim fails immediately simply because the Court has found that Plaintiff has failed to sufficiently allege an unlawful arrest claim based on lack of probable cause

---

[6] This is not to say that the 911 tape and the broken window  constitutes evidence that Defendants should have considered to be exonerative, as the Court has discussed earlier.

under the *Iqbal-Twombly* standard.  Thus, because the alleged facts do not state a claim for unlawful arrest, there is no basis for a false imprisonment claim.

The claim also fails to the extent Plaintiff alleges that the officers failed to investigate his claim after the arrest.   In his response, Plaintiff asserts that a police officer's awareness of facts relating to self-defense "can eliminate probable cause in most jurisdictions."  However, in the cases cited by Plaintiff for this proposition (none of which are from the Tenth Circuit or district courts in the Tenth Circuit), the altercation in which the defense of self-defense was raised was *with the arresting officer.   See* Doc. 19 at 5.   Obviously, the officers in those instances would be fully aware of all the circumstances.  In the instant case, Defendants were not present to observe the window being smashed in, or to see Plaintiff shooting Mr. Gabaldon in self-defense.  It was Plaintiff's word against a dead man, and there was no conclusive evidence available at the scene which eliminated the existence of probable cause to arrest Plaintiff.   Once probable cause is established, the Fourth Amendment does not require police officers to conduct further investigation in the hope of uncovering exculpatory evidence.  *Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995).[7]  Defendants cite to an unpublished case which is not from the Tenth Circuit, but which the Court nevertheless finds instructive because the facts are similar to the facts in the case at bar:

> In this case the two pertinent undisputed facts known to the defendant officers at the time they arrested the Plaintiff are that Dumay was bleeding in the presence of the officers and that the Plaintiff admitted to the officers that he had punched Dumay in the mouth.  From these facts alone the defendant officers could more than reasonably infer that the elements of third degree assault had been met. [Citation omitted] Once established through the officer's observation and the Plaintiff's admission that fact required no further corroboration or further

---

[7]   *See also Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir.1998) (validity of affirmative defense is irrelevant to whether or not police officer sued for false arrest had probable cause to make arrest); *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (police officer has no duty to investigate the validity of any defense); *but see, Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (A police officer may not ignore conclusively established evidence of the existence of an affirmative defense.).

> investigation . . . [A]ll the officers needed to know was whether Plaintiff had punched Dumay, and his admission that he had in fact done so meant that no witness was necessary to confirm that fact.
>
> Plaintiff argues that there is an important factual dispute over whether the Plaintiff admitted to the officers that he struck Dumay with or without provocation. But even resolving this factual question in favor of the Plaintiff, the officers would just as solidly have had probable cause to arrest, based upon a self-interested protestation of self-defense and only potentially biased witnesses available to corroborate Plaintiff's explanation.

*Rennols v. City of New York,* unpubl. opin., 2003 WL 22427752*3, n.1 & text (E.D.N.Y. 2003), *aff'd,* 124 Fed.Appx. 66 (2d. Cir. 2005). The Court has already noted that none of the other evidence mentioned in the complaint was sufficient for Defendants to conclusively know that the killing was justified. The mere fact that the driver's side window had been broken from the outside does not conclusively support a claim of self-defense, nor does the 911 tape (even if it was available for Defendants to review) because the tape represents Plaintiff's own description of the what was happening and what he was relaying to the 911 operator.

Accordingly, Defendants are entitled to qualified immunity on Plaintiff's false imprisonment claim. The officers may have been mistaken about whether probable cause existed, but in the circumstances as alleged in the Amended Complaint, they would not have known that their conduct violated Plaintiff's Fourth Amendment rights. *See Franz v. Lytle,* 997 F.2d 784 (10th Cir. 1993) (in a qualified immunity context, an official is entitled to immunity "even if he reasonably, but mistakenly" concluded that his conduct was reasonable). In the alternative, Defendants are entitled to dismissal of this claim because the allegations in the Amended Complaint do not state a claim for Fourth Amendment false imprisonment under the *Iqbal-Twombly* standard.

## CONCLUSION

In sum, the Court finds and concludes that Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment unlawful arrest claim because the Amended Complaint fails to allege a claim where a reasonable officer would have known that arresting Plaintiff would violate Plaintiff's Fourth Amendment rights based on law that was clearly established at the time. In the alternative, Defendants are entitled to dismissal of this claim because the facts as alleged by Plaintiff in the Amended Complaint, even when viewed favorably to Plaintiff, do not state a plausible claim for Fourth Amendment unlawful arrest under the *Iqbal-Twombly* standard.

The Court also finds and concludes that Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment false imprisonment claim. While the officers may have been mistaken about whether probable cause existed, based on the circumstances alleged in the Amended Complaint, they would not have known that their conduct violated Plaintiff's Fourth Amendment rights. In the alternative, Defendants are entitled to dismissal of this claim because the allegations in the Amended Complaint do not state a plausible claim for Fourth Amendment false imprisonment under the *Iqbal-Twombly* standard.

The Court makes other observations here which do not fit within any of the above discussion. The Amended Complaint includes other gratuitous facts which do not fit in any of Plaintiff's alleged claims, but are worth mentioning in order to avoid unnecessarily prolonging this case.

Plaintiff alludes to being incarcerated "as long as possible" before the preliminary hearing. The Court does not construe this assertion as an attempt to allege some sort of due process claim. Plaintiff is represented by counsel and thus, there is no need to construe a complaint liberally as there is for pro se plaintiffs. *See Ford v. Pryor,* 552 F.3d 1174, 1178 (10th

Cir. 2008) (noting liberal standard by which courts judge a pro se litigant's pleadings). Additionally, the allegations themselves do not mention any specific length of time that Plaintiff was detained before his release and do not allege a violation of due process. Instead, they imply that Plaintiff was detained unwillingly, but lawfully. Plaintiff also claims that during his incarceration in the Valencia County Detention Center, he was "treated in a sub-human way prior to a bond hearing or probable cause determination." Doc. 19 at 12. This statement undoubtedly alludes to allegations in the complaint that Plaintiff was told to drink from the toilet and that he was placed in a cell with a "particularly offensive and troublesome inmate"; references to the detention center's negative reputation in the context of prisoner rights; and the conclusion that he had been treated in such a manner because the deceased (Mr. Gabaldon, the burglary suspect) was a former correctional officer. Whether or not such allegations can rise to the level of a conditions of confinement claim, they fail to state a claim against the named Defendants in this case because there is no single fact that connects any of the Defendants to the alleged actions inflicted upon Plaintiff.[8]

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint **(Doc. 18)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall be separately filed.

_____
UNITED STATES DISTRICT JUDGE

---

[8] The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from unconstitutional conditions of confinement to the same extent that the Eighth Amendment protects convicted criminals. *See Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir.1992); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998).